IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

IN THE MATTER OF THE SEARCH OF )
BLACK APPLE IPHONE 11 ) Case No. 3:22-MJ-1245
SERIAL NUMBER F4JCF5VAN72J )
IMEI 352899110491775 )
)

FILED
JAN 24 2023
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Robert M. Howard, being duly sworn, state the following information to be true to the best of my knowledge, information and belief:

## INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 21 of the United States Code, who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21. I have been involved in the field of law enforcement since 1990 and I am employed by the Oak Ridge Police Department and presently assigned as a Task Force Officer ("TFO") for the United States Drug Enforcement Administration ("DEA") and have been so since October 2020. In that role, I am responsible for investigating crimes that involve unlawful importation and exportation of controlled substances, the possession with the intent to distribute controlled substances, the distribution of controlled substances, the use of communication facilities to further these offenses, as well as the related laundering of monetary instruments, in violation of Title 21, United States Code, Sections 841 (Illegal Distribution and Dispensing of Controlled Substances), 846 (Conspiracy to Distribute and Dispense Controlled Substances); and violations of Title 18, United States Code, Sections 1956 and 1957 (Money Laundering). I am currently assigned to the Knoxville District Office.

1

2. I have specialized training and experience in narcotics trafficking, conspiracy, and distribution investigations. I have participated in many aspects of drug investigations, including the use of confidential sources and undercover officers, physical surveillance, electronic surveillance, the execution of search and arrest warrants, the use of court-ordered intercepts of electronic communications, investigative interviews, the arrests of drug traffickers, and the analysis of seized records, physical evidence, and taped conversations. I have spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers. I am also familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations to purchase, transport, store, and distribute drugs and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogues used by drug traffickers and have spoken to other law enforcement officers with similar experience.

3. I am submitting this affidavit in support of an application for a warrant to search the following device: one black Apple iPhone 11 contained in a black Quad Lock Case with the serial number F4JCF5VAN72J and IMEI 352899110491775 ("TARGET DEVICE").

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant authorizing the search of the TARGET DEVICE, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that the TARGET DEVICE contains evidence of

2

violations of Title 21, United States Code, Sections 846, and 841(a)(l), as further described in Attachment B.

## CONSPIRACY OVERVIEW

5. Since January 2021, the DEA Knoxville District Office and the 5th Judicial Drug Taskforce (5th JDTF) has been investigating a crystal methamphetamine and heroin DTO that is based in Knox county, which is located in the Eastern District of Tennessee ("EDTN"). The investigation to date indicates the DTO is responsible for obtaining and distributing kilogram quantities of crystal methamphetamine and heroin. One of the members of this organization has been identified as Kevin GONZALEZ ("GONZALEZ").

6. During the course of the investigation, investigators have utilized a confidential source ("CS") to make four controlled purchases from GONZALEZ, totaling approximately 5 ounces of crystal methamphetamine and 4 grams of heroin. All of the above controlled purchases were arranged between CS and GONZALEZ via Facebook or via text message.

7. The CS has been deemed as reliable and has assisted in other investigations to include controlled purchases of narcotics that have resulted in the seizure of crystal methamphetamine, heroin, and the arrest of narcotics traffickers.

## PROBABLE CAUSE

8. On September 09, 2022, at approximately 9:45 a.m., members of the DEA Knoxville District Office, the Bureau of Alcohol, Firearms, Tobacco and Explosives (ATF) and the 7th Judicial Drug Task Force (7$^{th}$JDTF) met at a predetermined location in

3

anticipation for a buy bust operation. Prior to the operation, CS contacted GONZALEZ via-Facebook and via text message to arrange the purchase of four (4) ounces of crystal methamphetamine, which GONZALEZ agreed to sell to CS. For this operation, CS and GONZALEZ agreed to meet at the Walmart in Clinton, Tennessee. Due to the intent of law enforcement to take GONZALEZ into custody immediately upon his arrival, CS was never physically present on scene to complete a drug transaction with GONZALEZ.

9. Prior to the transaction, law enforcement established surveillance at GONZALEZ's residence, located at 8336 Oak Ridge Highway Lot H-14 in Knoxville, Tennessee and at the intended transaction location in Clinton, Tennessee.

10. At approximately 11:45 a.m., law enforcement observed a Black Dodge Charger bearing Tennessee tag BGX7112 (Registered Owner: Kevin FLORES GONZALEZ) leaving GONZALEZ's residence. As law enforcement maintained surveillance on the vehicle, GONZALEZ was positively identified as the front passenger and an unknown white female was observed as the driver. The white female was later identified as Katty MARTINEZ HERNANDEZ.

11. At approximately 12:05 p.m., law enforcement observed the Dodge Charger turn into the Walmart on Clinton Highway in Knoxville, Tennessee. Simultaneously, GONZALEZ contacted CS via-Facebook to inform CS that he had arrived at the Walmart. At this time, because GONZALEZ had arrived at the wrong Walmart, CS was instructed by your affiant via cell phone to change the transaction location to Kroger, located at 234 East Emory Road in Knoxville, Tennessee. GONZALEZ agreed to meet CS at the new location. Officers maintained surveillance on

the Dodge Charger as it travelled from the Walmart to the new location. GONZALEZ used the TARGET DEVICE when instructing the CS to meet at the new location.

12. At approximately 12:28 p.m., law enforcement observed the Dodge Charger enter the Kroger's parking lot, drive through the shopping plaza where it eventually parked in front of PetSmart at 250 East Emory Road in Knoxville, Tennessee. Once the vehicle was parked, law enforcement executed the arrest and GONZALEZ was removed from the vehicle. As GONZALEZ was being removed from the vehicle, a clear plastic bag containing a clear crystal like substance suspected to be crystal methamphetamine (gross weight of 141 grams) fell out of GONZALEZ's front pocket. MARTINEZ-HERNANDEZ was also removed from the vehicle and temporarily detained.

13. Following GONZALEZ's arrest, law enforcement conducted a full search of the Dodge Charger. At this time, agents recovered the TARGET DEVICE from the center console of the vehicle. While on scene, both MARTINEZ-HERNANDEZ and GONZALEZ stated that the TARGET DEVICE belonged to GONZALEZ.

14. Based on my training and experience as well as information from this investigation, I believe GONZALEZ utilized the TARGET DEVICE in the furtherance of the distribution of crystal methamphetamine and heroin in the Eastern District of Tennessee. Furthermore, it is common for individuals to maintain phone numbers, contacts, messages, images, and other electronic data regarding their activities as it pertains to the sell/purchase of narcotics. Therefore, I believe the TARGET DEVICE seized from GONZALEZ on September 9, 2022, will maintain valuable evidence

pertinent to the narcotics that were in his possession.

15. On September 28, 2022, the Honorable Judge Debra C. Poplin authorized a federal search warrant for TARGET DEVICE, case number 3:22-mj-1196. The search warrant had an execution date of October 9, 2022. The search warrant was executed on TARGET DEVICE on October 3, 2022, utilizing Cellebrite, which is a mobile extraction software system.[1] The contents of TARGET DEVICE were downloaded to a secure DEA server. Following the extraction, TARGET DEVICE was secured back into a temporary storage vault at the DEA Knoxville District Office, where it remains at the time of this affidavit.

16. On October 12, 2022, investigators conducted analysis of the digital content extracted from TARGET DEVICE. During this analysis, investigators discovered information contained within the encrypted application WhatsApp was not extracted from TARGET DEVICE, due to Cellebrite's software extraction limitations with respect to this particular device model. Due to these limitations, the content held within WhatsApp was reviewed manually by investigators.

17. Manual review of TARGET DEVICE revealed multiple conversations in WhatsApp, which was reviewed by SA Jason Klingler, who through job related duties and experience, is fluent in reading and speaking Spanish. SA Klinger observed a conversation which appeared to discuss a large quantity of narcotics supplied to GONZALES. One of these conversations was identified as being with a known narcotics

---

[1] Cellebrite's software extracts data from mobile devices and generates a report about the extraction. This tool gathers forensically sound digital evidence from smartphones in law enforcement custody. Additionally, the extraction capabilities of the Cellebrite software, and the type of data available for extraction, vary by device manufacturer and model.

6

source of supply through a different DEA/FBI investigation.

18. Due to the contents of these conversations being primarily in Spanish, investigators need to manually re-examine TARGET DEVICE with the utilization of a certified linguist. It is our belief that contents contained within the WhatsApp communications will reveal evidence of drug trafficking. Because the time to execute the initial search warrant in case number 3:22-mj-1196 has expired, this second search warrant is being sought out of an abundance of caution for the limited purpose of manually obtaining and reviewing WhatsApp data. As stated, TARGET DEVICE has remained in the custody of investigators, since the date of seizure on September 9, 2022, and therefore no changes or additions have been made to the TARGET DEVICE.

## Technical Terms

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless Telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates,

7

appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. Based on my training, experience, and research, I know that cellular devices such as the TARGET DEVICE, may have capabilities that frequently include acting as a wireless telephone and external hard drives. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, evidence of a crime, or point toward the existence of evidence in other locations. This data can--be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.

      b.      Based on my training, experience, and research, I know that cellular devices such as the TARGET DEVICE, may have capabilities that frequently include acting as a wireless telephone and external hard drives. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, evidence of a crime, or point toward the existence of evidence in other locations. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.

### Electronic Storage and Forensic Analysis

20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

8

Case 3:22-mj-01245-DCP   Document 2   Filed 12/08/22   Page 8 of 13   PageID #: 9

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DEVICE because:

    c. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    d. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    e. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    f. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other

9

evidence also falls within the scope of the warrant.

g. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

i. The nature of cellular phone-related evidence requires forensic analysts to employ a variety of different techniques to search for, document, and obtain electronic evidence. The search procedure may include the following techniques (the following is a nonexclusive list, as other search procedures may be used):

  i. examination of all of the data contained in the cellular telephone, and/or memory storage device in the cellular telephone to view the data and determine whether that data falls within the items to be seized as set forth herein;

  ii. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

  iii. surveying various file directories and the individual filed they

contain;

    iv. opening files in order to determine their contents;

    v. scanning storage areas; and

    vi. performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear.

22. Because this warrant seeks only permission to examine only the TARGET DEVICE which is already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. Based on the foregoing, there is probable cause to search the TARGET DEVICE, as set forth in Attachments A and B for evidence of drug trafficking in violation of Title 21, United States Code, Sections 846 and 841(a)(l).

Respectfully submitted,

_____
Robert Howard, DEA Taskforce Officer

Subscribed and sworn to before me on this 8th day of December, 2022.

_____
DEBRA C. POPLIN
United States Magistrate Judge

11

# ATTACHMENT A

## Particular Item to be Searched



Black Apple iPhone 11, Serial Number F4JCF5VAN72J and IMEI 352899110491775

1

## ATTACHMENT B

1. All records on TARGET DEVICE described in Attachment A that relate to violations of Title 21, United States Code, Sections 841 and 846 as follows:

    a. All Communications (texts and audio file content) contained within the application WhatsApp that occurred between January 20, 2021 and September 09, 2022.
    b. All photographs, videos, audio recordings, and text messages contained within the application WhatsApp, between January 20, 2021 and September 09, 2022, that relate to, further in any way, or constitute evidence of drug trafficking.
    c. All data, communications, information, and records, contained within the application WhatsApp, between January 20, 2021 and September 09, 2022.
    d. All data, communications, information, and records, in whatever form, contained within the application WhatsApp, between January 20, 2021 and September 09, 2022, that establish the identity or location of individuals engaged in drug trafficking.

2. Evidence of user attribution showing who used the particular TARGET DEVICE at the time the electronically stored evidence described in this warrant was created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history, if contained within the application WhatsApp.

    As used above, the term "records" and "information" include all of the forgoing items of evidence in whatever form and by whatever means they may have been created or stored.